LAW OFFICES OF THOMAS D. MAURIELLO
THOMAS D. MAURIELLO  (SBN 144811)
209 Avenida Fabricante, Suite 125
San Clemente, CA 92672
Telephone: (949) 542-3555
Facsimile: (949) 606-9690
tomm@maurlaw.com

(Additional counsel appear on signature page)
Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

BRIAN J. WOLIN, On Behalf
of Himself and All Others Similarly
Situated,

                          Plaintiff,

          vs.

LAND ROVER NORTH
AMERICA, INC.,

                          Defendant.

CASE NO. **8:07-cv-0627-AG-RNB**

**PLAINTIFF'S REPLY
MEMORANDUM OF POINTS
AND AUTHORITIES IN
SUPPORT OF MOTION FOR
CLASS CERTIFICATION**

**Date:   June 9, 2008
Time:   10:00 a.m.
Judge: Hon. Andrew J. Guilford
Courtroom:   10D**

[Declaration of Thomas D.
Mauriello in Support of Motion
filed concurrently]

[REDACTED VERSION]

PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION

1

# TABLE OF CONTENTS

2
TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

3
TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii-iv

4
I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5
II.   SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

6
III.  STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

7
IV.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

8
      A.   Manifestation In Every Vehicle Is Not Required . . . . . . . . . . . . . . . 6

9
      B.   The Defect Caused Substantial And Widespread Tire Wear
10         On The Vehicles . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

11
      C.   Land Rover Hid Relevant Evidence From Its Own Expert . . . . . . . . 9

12         1.   Daws Is At Land Rover's Beck And Call . . . . . . . . . . . . . . . . 9

13         2.   Land Rover Never Provided Daws With Key Documents Or
           Access To Key Witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . 10

14
15         3.   Daws's Conclusion That The Wolin's Tire Wear Is Atypical
                Is Demonstrably False . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

16              a.   The Literature Makes Clear That Alignment Issues
                     Can Cause Heel-Toe Wear . . . . . . . . . . . . . . . . . . . . . 13
17
18              b.   Land Rover's Own Documents Contradict Daws's
                     Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

19              c.   Land Rover's Service Bulletins And Actions
                     Contradict Daws's Conclusion . . . . . . . . . . . . . . . . . . 15
20
      D.   Common Issues Predominate Over Individual Issues . . . . . . . . . . . 16
21
           1.   Plaintiff's Warranty Claim Should Be Certified . . . . . . . . . . 16
22
           2.   Plaintiff's FDUPTA Claim Should Be Certified . . . . . . . . . . 18
23
           3.   Land Rover Improperly Infuses Significant Merits-
24              Based Inquiries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

25         4.   Individual Driving Habits And Experiences Do Not
                Preclude Class Certification Where There Is A
26              Common Defect . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

27
V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

28

# TABLE OF AUTHORITIES

## Federal Cases

*Bailey v. Monaco*,
350 F.Supp.2d 1036 (N.D.Ga. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Barbarin v. General Motors Corp.*,
1993 WL 765821 (D.D.C. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Bishop v. Saab Automobile A.B.*,
1996 WL 33140020 (C.D.Cal. Feb.16, 1996) . . . . . . . . . . . . . . . . . . . . . . . 7

*Burkhalter Travel Agency v. MacFarms Intern., Inc.*,
141 F.R.D. 144 (N.D. Cal. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Chamberlan v. Ford Motor Company*,
402 F.3d 952 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Eigen & Carlisle v. Jacqueline*,
417 U.S. 156 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Ford Motor Co. v. McDavid*,
259 F.2d 261 (4th Cir. 1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Frosini v. Bridgestone Firestone North American Tire, LLC*,
2007 WL 2781656 (C.D.Cal. August 24, 2007) . . . . . . . . . . . . . . . . . . . . . 21

*Gulf Oil Co. v. Bernard*,
452 U.S. 89 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Hobco, Inc. v. Tallahassee Associates*,
807 F.2d 1529 (11th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Bridgestone/Firestone Inc.*,
288 F.3d 1012 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Bridgestone/Firestone, Inc.*,
155 F.Supp.2d 1069 (S.D. Ind. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Ford Motor Company Vehicle Paint Litigation*,
182 F.R.D. 214 (E.D.LA. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Joseph v. General Motors Corp.*,
109 F.R.D. 635 (D. Colo. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Marino v. Home Depot U.S.A., Inc.*,
245 F.R.D. 729 (S.D.Fl. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

1  *Miller v. General Motors Corp.*,
2    2003 WL 168626 (N.D.Ill. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

3  *Montgomery v. New Piper Aircraft, Inc.*,
     209 F.R.D. 221 (S.D.Fl. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

4  *Morris v. BMW of North America, LLC*,
5    2007 WL 3342611 (N.D.Cal., Nov. 7, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

6  *O'Connor v. Boeing North America, Inc.*,
     197 F.R.D. 404 (C.D.Cal. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

7  *O'Neill v. The Home Depot U.S.A., Inc.*,
8    243 F.R.D. 469 (S.D.Fl. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

9  *Samuel-Bassett v. Kia Motors America, Inc.*,
     212 F.R.D. 271 (E.D.Pa. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

10 *Sanneman v. Chrysler Corp.*,
11   191 F.R.D. 441 (S.D.Ill. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

12 *Veal v. Crown Auto Dealership, Inc.*,
     231 F.R.D. 572 (M.D.Fl. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

13

14 **State Cases**

15 *Anthony v. General Motors Corp.*,
     33 Cal.App.3d 699 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

16 *Fischetti v. American Isuzu Motors, Inc.*,
17   918 So.2d 974 (Fla.App. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

18 *Frank Griffin Volkswagen, Inc. v. Smith*,
     610 So.2d 597 (Fla.App. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

19 *Hicks v. Kauffman*,
20   89 Cal. App. 4th 908 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

21 *Hutson v. Rexall Sundown, Inc.*,
     837 So.2d 1090 (Fla.App. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

22 *In re Cadillac V8-6-4 Class Action*,
23   43 A.2d 736 (N.J. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

24 *Microsoft Corp. v. Manning*,
     914 S.W.2d 602 (Tex.Ct.App. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

25 *Martin v. Amana Refrigeration, Inc.*,
26   435 N.W.2d 364 (Iowa 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

27 *Stabile v. Daimlerchrysler Corp.*,
     2007 WL 1062241 (N.J.Super. April 11, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 22

28

*Volkswagen of Am., Inc. v. Sugarman,*
909 So.2d 923 (Fla.App. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**Statutes and Rules**

Cal. Civ. Code § 1795.92 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fla.Stat. § 501.201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

# I.   INTRODUCTION

Plaintiff, Brian J. Wolin ("Plaintiff" or "Wolin"), respectfully submits this Reply Memorandum in support of his Motion for Class Certification ("Motion"). For the reasons explained fully below, the Court should grant the Motion.[1]

# II.   SUMMARY OF ARGUMENT[2]

The opposition of Land Rover North America, Inc. ("Land Rover" or "Defendant") to class certification is both ironic and, out of apparent necessity, evasive with respect to the actual facts of record and applicable law. Land Rover vehemently argues that Wolin's claims are atypical, implicate numerous individual issues and fail to address a common defect such that certification is purportedly unwarranted. Land Rover does so, however, having itself created and implemented (albeit without disclosing it to consumers) a uniform repair program to address the very defect that affected all of the model year 2005 and 2006 Land Rover LR3

---

[1] Plaintiff has asserted claims under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla.Stat. § 501.201 *et seq.*, as well as for breach of express warranty and unjust enrichment.

[2] Plaintiff relies on the Declaration of Thomas D. Mauriello ("Mauriello Decl."), to which certain documentary evidence and other discovery materials (all of which are attached as Exhibits 1-2 and which are cited as "Mauriello Decl. at Ex. __"), as well as certain cited portions of deposition transcripts [all of which are cited as the initial of the deponent's first name, the deponent's last name and "Dep. at __." (*e.g.* J. Daws Dep. at __) and appear as Exhibits 3-6 to the Mauriello Decl.], and the accompanying Rebuttal Declaration of Plaintiff's expert, Robert J. Wozniak ("Mr. Wozniak")("Wozniak Rebuttal Decl."). In addition, Plaintiff relies upon certain documentary evidence submitted in connection with Plaintiff's Memorandum in Support of Motion for Class Certification and attached as exhibits to the Declaration of Karen M. Leser Grenon ("Grenon Decl.") as Exhibits 1-30 collectively, as well as the Declaration of Robert J. Wozniak ("Wozniak Decl."), which was submitted at that time. Plaintiff further relies on all of the other materials submitted in connection with his Motion for Class Certification.

automobiles ("Vehicles" or "LR3s") at issue in this case. Although Plaintiff has demonstrated the existence of this central common issue of fact, as well as the existence of a multitude of other common issues of both law and fact, Land Rover seeks to defeat Plaintiff's Motion by improperly seeking to impose a heightened standard on Plaintiff -- by implying that Plaintiff has not proven his claims as opposed to merely demonstrating that the claims are capable of classwide treatment (which is all that is required at this stage). Furthermore, Land Rover improperly asserts that all Vehicles must have experienced premature tire wear as a result of the defect, in an effort to further infuse a merits-based determination at the class certification stage. As detailed below, the fact that the defect may not have manifested itself in uneven tire wear in every Vehicle does not serve as a bar to certification. It is beyond cavil that, when the appropriate standard is applied, the facts adduced in discovery to date demonstrate that common issues of law and fact abound such that certification of this action is warranted.

In seeking to convince this Court to deny certification, Land Rover goes to great lengths to ignore the multitude of its own documents that demonstrate the existence of a common defect with a uniform solution. This "head-in-the-sand" approach also was adopted by Land Rover's expert, John W. Daws ("Daws"), who literally concluded that there was no common issue, having not even reviewed, *inter alia*, any of Land Rover's internal documents relating to the defect, including the Technical Bulletins which specify the precise, uniform manner in which the defect at issue was supposed to be remedied by Land Rover's dealerships. Moreover, as set forth below, Daws has been retained on approximately one hundred (100) occasions to testify for Ford Motor Company ("Ford"), Land Rover's parent company until on or about March 26, 2008, when Land Rover was sold to Tata Motors, Ltd., and, not surprisingly, given his essentially in-house

1  position with Ford, has never rendered an opinion finding that tire wear resulted

2  from a vehicle or manufacturing defect.[3]

3      Land Rover further seeks to avoid certification by perversely and futilely

4  attempting to demonstrate that Wolin is somehow atypical.  This effort fails

5  miserably, however, as it is clear that Wolin's Vehicle suffered from the same type

6

7  _____

8      [3]Land Rover also seeks to influence the Court by referencing documents that
   supposedly establish the LR3 to be a "marvel" of engineering when, in fact, the

9  Vehicles at issue are consistently rated as unreliable by reputable consumer
   reporting organizations.

10 http://blogs.consumerreports.org/cars/2006/03/final_thoughts_.html (CR [meaning

11 Consumer Reports] owned it for a little over a year and we put over 11,000 miles
   on it. It's not a Top Pick. It didn't score near the top of its category. It's not even

12 recommended by CR due to its subpar first-year reliability.... Sure, some of the

13 controls are cryptic and poorly located, folding the seats can be fussy, the ride gets
   a bit unsettled on bumpy camber changes, and fuel economy--at only 13 mpg

14 overall--is horrendous.  Even snow traction wasn't all that great, especially when

15 braking....  Before we sold it, the LR3 went to the local dealership to have the rear

16 wiper and park assist sensors fixed; a fuel-tank recall completed; a new
   fuel-sending unit installed to correct gauge inaccuracy; and a persistent rattle

17 corrected (the third-row jump seats were loose);

18 http://www.consumeraffairs.com/news04/2005/cr_car_reliability.html (noting that

19 Consumer Reports rated the following automobiles as unreliable models: V8 BMW
   X5, Land Rover Range Rover, Land Rover LR3, Porsche Cayenne, Volkswagen

20 Touareg, and Volvo XC90); http://ask.cars.com/2008/01/land-rover-depe.html

21 (J.D. Power's 2007 manufacturer dependability ratings rank Land Rover at the
   bottom of the list, with owners reporting a total of 398 problems per 100 vehicles

22 during the first three years of ownership).  The industry average is 216, while

23 Buick and Lexus got the top spot in 2007 with 145. Suzuki (324), Isuzu (322),
   Saab (319) and Volkswagen (298) sit directly above Land Rover in the rankings....

24 As for the LR3, Consumer Reports lists its predicted reliability as "Worse Than

25 Average," which is on par with the rest of Land Rover's models).  Moreover, in an
   effort to ameliorate the defect at issue in this litigation, the alignment specifications

26 on the Vehicles were modified on at least three (3) separate occasions.

27 (Declaration of George Sherrey ("Sherrey Decl.") at ¶¶33-36.)

28

1  of uneven wear which was covered by Land Rover's service bulletins and which

2  was caused by the acknowledged geometry alignment defect with the Vehicles.

3  Moreover, Wolin was required to go out-of-pocket as a result of the premature and

4  uneven tire wear caused by the defect and, thus, has been damaged by Land

5  Rover's conduct.

6       From a plain reading of Land Rover's Memorandum in Opposition to

7  Plaintiff's Motion for Class Certification ("Opposition"), it is clear that Defendant

8  would have this Court conclude that no case involving tire wear (or, for that matter,

9  any product defect) can ever be certified -- even where, as here, the tire wear is

10  admittedly caused by a uniform Vehicle defect. Such a finding is unwarranted,

11  unsupportable and runs counter to the remedial purposes of the class action

12  mechanism. This case is perfectly suited for class action treatment. For these

13  reasons, as well as all of the reasons explained fully below, the Court should grant

14  Plaintiff's Motion.

15  **III.   STANDARD**

16

17       It is well settled that Plaintiff need not prove the merits of his action at the

18  class certification stage. *See Eigen & Carlisle v. Jacqueline*, 417 U.S. 156, 177-78

19  (1974); *Burkhalter Travel Agency v. MacFarms Intern., Inc.*, 141 F.R.D. 144, 152

20  (N.D. Cal. 1991). It also is well established that the Court's decision to grant class

21  certification lies within its sounds discretion. *See Gulf Oil Co. v. Bernard*, 452

22  U.S. 89, 100 (1981). Moreover, any doubts about whether to certify a class should

23  be resolved in favor of certification. *Joseph v. General Motors Corp.,* 109 F.R.D.

24  635, 638 (D. Colo. 1981) ("Because the class certification is subject to later

25  modification, the court should err in favor of, and not against, the maintenance of

26  the class action."). Land Rover's Opposition repeatedly ignores this standard and,

27  instead, seeks to saddle Plaintiff with the burden of proving that the Vehicles have

28

1   a specific alignment geometry defect that is causing the tire wear.  That is simply

2   not Plaintiff's burden at class certification and Land Rover's efforts to defeat class

3   certification through this attempted "sleight of hand" should not be countenanced.[4]

4   Moreover, Land Rover's "kitchen sink" approach to opposing this Motion, where it

5   seeks to mix and muddle facts, law and applicable standards, should not be taken

6   as persuasive advocacy.  Simply put, just because it may be difficult, at times, to

7   understand what Land Rover may be arguing does not mean that this case is

8   anything but well suited for class certification.  When Plaintiff's proffered theory is

9   analyzed, pursuant to the applicable standard for his Motion, it is clear that the

10  facts pertinent to the claims asserted by Wolin and, in particular, the alignment

11  geometry defect, are uniquely well-suited for resolution on a classwide basis.[5]

12

---

13      [4]Plaintiff believes that there is sufficient evidence to suggest that he will

14  prevail on the merits of this action as well.

15      [5]In its ongoing effort to avoid its own documents and admissions in this

16  case, Land Rover relies upon a number of cases that purport to stand for the

17  proposition that allegations involving motor vehicle defects are not well-suited for
    class certification.  These cases, however, are distinguishable on their face.  In *In*

18  *re Bridgestone/Firestone Inc.*, 288 F.3d 1012 (7th Cir. 2002), contrary to this case,

19  there was no allegation that a uniform defect in the vehicles was causing the
    problems with the tires equipped on the vehicles that comprised the proposed class.

20  Similarly unavailing is Land Rover's reliance on three vehicle paint defect cases

21  (*Sanneman v. Chrysler Corp.*, 191 F.R.D. 441 (S.D.Ill 2000); *In re Ford Motor
    Company Vehicle Paint Litigation* ("*Ford Paint*"), 182 F.R.D. 214 (E.D.La. 1998);

22  and *Miller v. General Motors Corp.*, 2003 WL 168626 (N.D.Ill. 2003)).  *Sanneman*

23  and *Ford Paint* are inapposite as they involved allegations of defective paint on
    numerous makes and models manufactured at various plants over at least a seven

24  (7) year period.  *Sanneman*, 191 F.R.D. at 450.  *See Ford Paint*, 182 F.R.D. at 220

25  ("Ford's challenged course of conduct spanned at least seven years and involved
    different models of vehicles, made of different materials, painted a variety of

26  colors at different plants, using different paint formulae.").  *Miller* also provides no

27  assistance to Land Rover.  In *Miller*, the Court was merely discussing the potential

28  difficulties in certifying claims sought on behalf of nationwide classes.  Wolin, of

# IV.   ARGUMENT

## A.   Manifestation In Every Vehicle Is Not Required

Defendant's first argument appears to be that the class should not be certified because the defect allegedly has not resulted in premature and uneven tire wear on all of the Vehicles.  Contrary to Land Rover's position, however, there is no authority to support the proposition that Plaintiff need make such an allegation or present such proof at the class certification stage.  Courts have routinely made it crystal clear that where, as here, the defect is inherent in Defendant's product, the fact that the defect has not yet manifested itself for each class member does not bar certification of class claims.  *See In re Bridgestone/Firestone, Inc.*, 155 F.Supp.2d 1069, 1099-1100 (S.D.Ind. 2001) (no need to allege manifest injury to assert breach of warranty claim on behalf of a class); *In re Cadillac V8-6-4 Class Action*, 43 A.2d 736 (N.J. 1983) (class certified where members of class included all owners of engines at issue regardless of whether the problems were manifest); *Microsoft Corp. v. Manning*, 914 S.W.2d 602, 610 (Tex.Ct.App. 1995) (class members may include those who purchased the software but have not experienced a manifestation of the defect); *Martin v. Amana Refrigeration, Inc.*, 435 N.W.2d 364 (Iowa 1986) (class members included those who purchased allegedly defective furnace and water heaters where all units did not fail).[6]

---

course, is not seeking certification of a nationwide class here.  Lastly, *O'Connor v. Boeing North America, Inc.*, 197 F.R.D. 404 (C.D.Cal. 2000), also is unavailing. There, the claims which plaintiffs sought to certify included, *inter alia*, medical monitoring claims on behalf of certain affected individuals over a fifty (50) year time span.  Such facts are, again, not present here.  In sum, Land Rover continues to ignore the fact that Wolin has alleged the existence of a common defect in the Vehicles that was the cause of the uneven and premature tire wear.

[6]*See also Hicks v. Kauffman*, 89 Cal.App.4th 908, 923 (2001), *citing Anthony v. General Motors Corp.*, 33 Cal.App.3d 699 (1973)(appellate division

1    The present case is analogous to *Manning, supra*.  There, the plaintiffs

2    purchased a software program where one function was to compress data on the

3    consumer's hard drive.  *Id.* at 605.  Microsoft had marketed the program both

4    directly and through computer manufacturers "without adequate testing." *Id.*  The

5    plaintiffs sought compensation in the form of the cost of the software that they

6    were required to purchase from Microsoft to correct the defect in the program in

7    order to save their hard drives from malfunction and/or to prevent further

8    malfunction.  *Id.* at 606.  Microsoft attempted to defeat class certification (after

9    discovery) by arguing that plaintiffs who had not yet suffered damage in the form

10   of lost data rendered the claims unsuitable for class treatment.  *Id.*  The *Manning*

11   Court rejected this assertion, distinguishing certain cases relied upon by the

12   Defendant:

> Even though the defect is not manifest today, perhaps because the user is not using the data compression feature, it may manifest itself tomorrow.  The only way for . . . [the] buyer to avoid the possibility of injury is to pay for the upgrade, never use the data compression feature, or use another operating system.  The buyer never gets what he bargained for, i.e. an operating system with an effective data compression feature.

*Id.* at 609; *see also Hicks*, 89 Cal.App.4th at 923 ("[w]e see no reason why a

homeowner should have to wait for the inevitable injuries to occur before

recovering damages to repair the defect and prevent the injuries from occurring").

concluding that trial court erroneously limited warranty claims to potential class members with homes in which a product "failed" and caused "manifest damage," where allegation was that all of the concrete slabs were potentially defective).  Land Rover's reliance on *Bishop v. Saab Automobile A.B.*, 1996 WL 33140020 (C.D.Cal. Feb. 16, 1996), is unavailing because the plaintiffs in that case asserted claims in strict tort liability and negligence.  *Barbarin v. General Motors Corp.*, 1993 WL 765821 (D.D.C. 1992), is equally unavailing because there, plaintiff could not even demonstrate that the brake system at issue on numerous models of vehicles was identical.

## B.   The Defect Caused Substantial And Widespread Tire Wear On The Vehicles

Contrary to Land Rover's assertions, and as set forth at length in Plaintiff's initial submission, the defect caused significant and widespread premature tire wear on the Vehicles.  In addition to the multitude of Land Rover documents that confirm this fact, the recent depositions of service managers from Land Rover dealerships, likewise, provide confirmation.  Michael Snyder ("Snyder"), the Service Manager for Land Rover Palm Beach (Florida), indicated that prior to seeing premature tire wear on the Vehicles, he had not documented any complaints from customers about premature tire wear on any Land Rover vehicle.  (M. Snyder Dep. at 20.)  Snyder also indicated that he was unaware of any other technical service bulletins being issued that related to premature tire wear on any Land Rover cars other than the Vehicles at issue in this litigation.  (M. Snyder Dep. at 23.)  With respect to the Vehicles, Snyder articulated his understanding (as confirmed by Land Rover) that the tire wear was caused by a Vehicle defect "because it was unusual for [Snyder] to see tire wear at that low mileage on an abnormal number of cars."  (Snyder Dep. at 43.)[7]  Moreover, Snyder acknowledged that he had observed hundreds of tires in connection with submitting claims under the technical service bulletin, which is significant given that the Florida dealership sold and/or leased approximately 230 Vehicles.[8]

---

[7]In recognition of the fact that consumers reasonably expect, at an absolute minimum, to receive at least 30,000 miles from a set of tires, Snyder began providing goodwill relief to customers based upon an expected 30,000 mile useful assumption, prior to Land Rover's implementation of its service bulletin (which only was based upon a 20,000 mile useful life assumption.  (M. Snyder Dep. at 48.)

[8]The significant scope of the issue was confirmed by Terry Barker, the Service Manager for Land Rover Nashville, who stated that his dealership had submitted, at a minimum, 50 to 100 claims under the technical service bulletin, and

## C.   Land Rover Hid Relevant Evidence From Its Own Expert

Land Rover's Opposition relies heavily on the "expertise" and opinions of Daws, upon which Land Rover bases its assertions that (1) tire wear issues are not amenable to class treatment; (2) the opinion of Robert J. Wozniak ("Wozniak") regarding the existence of a common defect is inaccurate; and (3) Wolin is somehow not a typical class member.  As has become clear through discovery, however, Land Rover failed to provide Daws with any meaningful or relevant documents or evidence regarding the defect at issue and, as such, Daws's opinions are literally not worth the paper they are written upon.[9]

### 1.   Daws Is At Land Rover's Beck And Call

It is not surprising that Land Rover selected Daws as its expert in this matter. He has admittedly been retained by Land Rover in at least four (4) separate matters and, remarkably, has been retained by Ford, Land Rover's parent corporation at the time of his engagement, on more than one hundred (100) occasions in the past six (6) or seven (7) years alone.  (J. Daws Dep. at 38-42.)  Daws has never testified on behalf of a plaintiff in a class action and, despite the numerous engagements by Land Rover and Ford, among others, has never rendered an opinion or testified to the existence of (1) a common defect in a tire or vehicle; (2) a design defect in a vehicle or class of vehicles; (3) a manufacturing defect causing tire wear in a vehicle or class of vehicles; or (4) a design defect with a tire causing tire wear.  (J. Daws Dep. at 61-63.)  Furthermore, Daws has never testified as an expert or

---

possibly more.  (T. Barker Dep. at 59-62.)

[9]Of course, Wozniak's findings have further been substantiated by additional documents produced by Land Rover, which confirm Land Rover's understanding that the Vehicles were released in such a fashion that the alignment geometry would be outside the system design specifications for the Vehicles.  (Mauriello Decl. at Ex. 1.)

1  rendered an opinion regarding alignment geometry and has never testified against a

2  vehicle manufacturer on behalf of a tire manufacturer.  *Id.*

### 2. Land Rover Never Provided Daws With Key Documents Or Access To Key Witnesses

5   In light of Daws's apparent predisposition to support a vehicle

6  manufacturer's arguments in any given case, it is particularly remarkable that Land

7  Rover failed to provide him with any of the critical documents in this case which

8  explain, *inter alia*, the defect at issue, the steps taken by Land Rover to address the

9  defect and the pervasive and uniform nature of the defect and manner in which

10 Land Rover addressed the defect.  Although Daws was retained to review

11 Wozniak's findings and provide a rebuttal (J. Daws Dep. at 37-38), the categories

12 of documents that were never provided to him, never requested by him and, thus,

13 never considered by him in reaching his conclusions, are staggering.  Specifically,

14 Daws did not review (1) the class certification papers (with the exception of

15 Wozniak's Declaration); (2) any internal Land Rover documents regarding the

16 nature and scope of the defect and the warranty coverage considered for the defect

17 or the depositions of Land Rover's witnesses regarding these subjects (including

18 the documents and deposition transcripts upon which Wozniak specifically relied

19 in reaching his conclusions, even though Daws was hired in an effort to rebut

20 Wozniak); and (3) the Sherrey Decl., which sets forth, *inter alia*, the multitude of

21 adjustments made by Land Rover to factory settings in an attempt to remedy the

22 tire wear caused by the alignment geometry defect.[10]  (J. Daws Dep. at 88-99.)

---

24      [10]Consistent with the fact that Land Rover's witnesses were literally forced
25 to testify that documents did not mean what they said in an effort to defend Land
   Rover's conduct, Land Rover also was forced to conceal its own internal
26 documents and the depositions of its witnesses from its "expert."  Moreover, Land
27 Rover's footnote in its Opposition, *see* Land Rover's Opposition at 5, n.3, weakly
28 asserts that witnesses' recollections simply differ, does nothing to explain the gross

PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND
                                           AUTHORITIES IN SUPPORT OF MOTION FOR CLASS
                                           CERTIFICATION                            -10-

Moreover, Daws never spoke to any of the myriad of employees whose positions included day-to-day involvement with the alignment geometry defect and, in fact, was not even aware of the identity of those individuals.[11]  *Id.*

A telling admission by Daws regarding the lack of consideration that he gave seminal documents and evidence in rendering his opinion occurred when Daws was questioned regarding the service bulletins issued by Land Rover to its authorized dealerships, which specifically detailed the uniform repair that dealerships were to perform in an effort to address the defect at issue in this litigation.  When questioned about these critical repair documents, Daws stated that such information was not material to his opinion:

> Q.   As you sit here today, you don't know what a dealership, what type of work a dealership was to perform under the TSB or service bulletin?
>
> A.   No, not in detail no.
>
> Q.   Did you ever request that information from Land Rover?
>
> A.   It's in the documents.  Again, I was retained to look at Mr. Wozniak's opinions and to provide input to that along the lines of those opinions.  I was not retained to study the warranty policy and look at what a dealership was supposed to do or not

---

inconsistencies between witnesses' statements at deposition as compared to in email and other internal correspondence.

[11]To the extent that Daws deigned to review any materials (for example Wolin's deposition transcript), he outsourced that work to his daughter, who has no legal training or experience with tire wear issues. (J. Daws Dep. at 73-75.)  The shocking paucity of the information provided by Land Rover to Daws renders Land Rover's criticism of Wozniak's scope of review laughable. In addition to conducting eight (8) inspections of Vehicles located throughout the United States, Wozniak inspected additional tires and service records of Vehicle owners and lessees. (Wozniak Rebuttal Decl., ¶ 12.)  In addition, he also reviewed thousands of Land Rover documents and the deposition testimony of all of the Land Rover representatives who were deposed to gain a broad understanding of the alignment geometry defect at issue and Land Rover's handling of that defect. *Id.*

1    supposed to do.

2    Q.   In the context of rendering your decision, you didn't view
          material as to what work was to be performed by the dealership
3         in connection with replacing the uneven tires. Is that correct?

4    A.   Well, I read the TSBs. Did I make detailed notes of them? Did
          I analyze them? No, in terms of the warranty coverage.
5

6    Q.   So you didn't view that information as material to your
          declaration. Is that correct?

7    A.   That's correct.

8    (J. Daws Dep. at 134-135.) It is within this paradigm that Land Rover's reliance

9    on Daws's opinions regarding certification should be viewed -- that is, Daws's

10   "opinion" should be afforded no credence whatsoever -- since it is based on a

11   deliberate refusal to consider critical evidence and, instead, in sum, is based upon

12   platitudes and generalities unrelated to the facts of this case.

13          **3.    Daws's Conclusion That Wolin's Tire Wear Is Atypical**
14                  **Is Demonstrably False**

15          Based on Daws's "review" of the exceedingly limited and selective materials

16   that Land Rover and he deemed material, he concluded that Wolin's Vehicle is

17   suffering from a type of uneven tire wear (heel-toe wear) that is purportedly

18   different than the uneven tire wear caused by the alignment geometry defect. In

19   connection with this conclusion, Daws posits that, since Wolin reported

20   experiencing noise and vibration with his tires, that his tire wear could not be

21   attributed to an alignment defect. But, as explained below, tire noise and vibration

22   is the very symptom that first led Land Rover to investigate and diagnose the

23   defect at issue. Daws's conclusions, therefore, are demonstrably erroneous.[12]

24

25   _____

26          [12]Equally unavailing is Land Rover's attempt to attribute uneven wear to a
     number of potential factors unrelated to the alignment geometry defect. As Daws
27   was required to acknowledge, driving in different conditions (hot and cold),
     driving on different road surfaces, aggressive driving and other driving habits
28

CASE NO. 8:07-cv-0627-AG-RNB          PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND
                                      AUTHORITIES IN SUPPORT OF MOTION FOR CLASS
                                      CERTIFICATION                              -12-

### a. The Literature Makes Clear That Alignment Issues Can Cause Heel-Toe Wear

In the first instance, Daws's conclusion that alignment issues cannot cause heel-toe wear is simply wrong and is repudiated by tire wear literature (including literature by experts upon whom Daws himself relies). (Wozniak Rebuttal Decl., ¶¶ 4-9.)[13] Daws's finding is directly repudiated by additional literature authored by Larry Carley, an individual upon whom Daws specifically relies in connection with the opinion he rendered in this matter. (Wozniak Rebuttal Decl., ¶¶ 6, 9; J. Daws Dep. at 86.) As Wozniak notes in his Rebuttal Declaration, the heel-toe wear observed on certain Vehicles as a result of the alignment geometry defect, including that of the Wolin Vehicle, could meet the requirements of the service bulletins because, in fact, heel-toe wear can result in a difference in tread depths between the inner and outer portions of the tire -- which is exactly what the service bulletins at issue address. (Wozniak Rebuttal Decl., ¶ 11.) Thus, as a threshold matter, Daws's position regarding heel-toe wear not being caused by alignment issues is untenable, as is Land Rover's position that Wolin's tire wear is atypical.[14]

---

(such as panic breaking) would not cause uneven wear absent an alignment issue. (J. Daws Dep. at 116-122, 140-141.)

[13]Indeed, even Daws was forced to acknowledge that he has seen instances where heel-toe wear was caused by alignment issues. (J. Daws Dep. at 133.)

[14]Moreover, it is simply not surprising that Defendant's expert and Plaintiff's expert disagree about certain disputed facts. The mere existence of the disputed fact does not, in any manner, impair the ability of this Court to certify these claims. Rather, it simply highlights the fact that common issues of law and fact exist. Plaintiff need not prove his case at this time. Whether the alignment defect was causing the uneven tire wear experienced by Wolin and thousands of other class members is a common issue of fact which clearly is amenable to treatment on a classwide basis.

### b.   Land Rover's Own Documents Contradict Daws's Conclusion

In analyzing the impact of the geometry alignment defect on uneven wear on the Vehicles, Land Rover itself reached conclusions that are diametrically opposite of those rendered by Daws regarding the cause and nature of the wear. Specifically, Land Rover's documents reflect the following internal findings:

| | | |
|---|---|---|
| REDACTED | REDACTED | REDACTED |
| REDACTED | REDACTED | REDACTED |
| REDACTED | REDACTED | REDACTED |

(Mauriello Decl. at Ex. 2 (emphasis added); Wozniak Decl., ¶ 10.)[15]  Thus, having access to a tremendous amount of information, personnel, data and documents -- which conveniently were never made available to Daws -- Land Rover reached a significantly different conclusion regarding whether the admitted alignment geometry defect in the Vehicles is consistent with the tire wear that Daws concludes occurred on the Wolin Vehicle.[16]  Despite its caviling and carping, it is

---

[15]George Sherrey ("Sherrey"), Land Rover's Group Leader of Chassis System Integration, testified that he had a specific recollection of seeing the data and information contained in this document, which is dated January 30, 2007, during the course of his employment with Land Rover.  (G. Sherrey Dep. at 47, 195-198.)  This is not surprising, since Sherrey is listed as the "originator" of the document.  (Mauriello Decl. at Ex. 2.)  Nevertheless, like most of Land Rover's witnesses who arrive at deposition consistently unwilling to admit the plain meaning of documents, Sherrey refused to acknowledge any correlation between alignment issues and heel-toe wear.  (G. Sherrey Dep. at 134-144.)

[16]Interestingly, the documents reflecting this information were first produced to Plaintiff by Land Rover on or about April 14, 2008.  Moreover, since Plaintiff filed his Motion, which submission included the Wozniak Decl., Land Rover has

1   beyond dispute that the wear is consistent with the defect at issue.

2             c.    **Land Rover's Service Bulletins And Actions**
3                   **Contradict Daws's Conclusion**

4       Daws's arguments regarding Wolin's purported typicality issues also are

5   belied by Land Rover's own service bulletins and actions.  First, Daws states that

6   Wolin is atypical because his tires were noisy, which Daws attributes to non-

7   alignment type wear.  In making this finding, however, Daws simply did not

8   consider the internal Land Rover documents that reflect that, in investigating the

9   alignment geometry, customer complaints of noise were specifically identified --

10  because he apparently was not provided with them.  As Daws was apparently

11  unaware, the following representative feedback was received by Land Rover from

12  its authorized dealerships:

13              REDACTED          REDACTED      REDACTED

14              REDACTED          REDACTED      REDACTED

15              REDACTED          REDACTED      REDACTED

16
17  (Grenon Decl. at Ex. 12.)

18      As Daws was required to ultimately acknowledge, the service bulletins and

19  technical service bulletins that Land Rover issued to its authorized dealerships

20  expressly articulated (1) the uniform manner in which warranty coverage (albeit

21  insufficient coverage) was to be provided; (2) the uniform repair that was to be

22  implemented to address the geometry defect; and (3) do not exclude coverage for

23  those tires that experienced noise or tires that caused vibration.  (Grenon Decl. at

24  Exs. 2, 11, 13; J. Daws Dep. at 125.)  Furthermore, the service bulletins

25  specifically contemplate, and provide for replacement, of tires that are unevenly

26  worn on the inside *or outside* edges -- a fact that plainly surprised Daws at his

27  _____

28  produced in excess of an additional 220,000 documents.

CASE NO. 8:07-cv-0627-AG-RNB       PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND
                                   AUTHORITIES IN SUPPORT OF MOTION FOR CLASS
                                   CERTIFICATION                                      -15-

1  deposition. *Id.* Moreover, in recognition that Wolin's tires were wearing unevenly
2  and prematurely as a result of the alignment defect, Land Rover did not require him
3  to pay for certain of the replacement tires.[17]

4      **D.**    **Common Issues Predominate Over Individual Issues**

5          **1.**    **Plaintiff's Warranty Claim Should Be Certified**

6      Land Rover's entire misleading and ill-founded analysis of Plaintiff's breach
7  of warranty claim is nothing more than an effort to confuse an otherwise
8  straightforward claim that clearly should be certified. First, Land Rover's
9  argument that Plaintiff cannot assert an express warranty because Land Rover's
10  warranty is purportedly a "limited warranty," is belied by the plain language of the
11  warranty itself, which specifically states that it is an "express warranty." Second,
12  the cases upon which Land Rover relies are inapposite. Third, Land Rover's
13  Opposition actually demonstrates the existence of common issues of law and fact
14  underpinning Plaintiff's breach of warranty claim and confirms that certification is
15  appropriate.

16      Land Rover first asserts Plaintiff cannot sustain an express warranty claim
17  because Land Rover purportedly provided him (and all class members) with a
18  limited warranty. Remarkably, however, Land Rover makes this assertion without
19  noting the following language contained in the warranty:

20  

21        This New Vehicle Limited Warranty **is the only express warranty applicable to your vehicle**. Land Rover North America, Inc., neither
22        assumes, nor authorizes anyone to assume for it, any other obligation or liability in connection with this warranty.

23  (Willen Dec. at Ex. 7)(emphasis added.) Thus, on its face, Land Rover's warranty

24  

25  _____

26      [17]As set forth herein, however, Wolin was required to go out-of-pocket and, thus, has been damaged as a result of Land Rover's conduct. Morever, recognizing
27  that Plaintiff has suffered actual loss, Land Rover did not challenge the sufficiency
28  of Plaintiff's Complaint.

1  is an express warranty.  Moreover, under Florida law, it is clear that a written

2  manufacturer's warranty (even if it is a limited warranty, as Land Rover contends),

3  is actionable under an express warranty claim.  *See Fischetti v. American Isuzu*

4  *Motors, Inc.*,  918 So.2d 974 (Fla.App. 2005).  In *Fischetti*, the Court overturned

5  the entry of summary judgment in favor of the manufacturer, and specifically held

6  that the consumer could proceed with an express warranty claim against the

7  manufacturer.  918 So.2d at 976.  The Court made this determination, even though

8  the warranty at issue was a "limited warranty."  *Id.*  Thus, contrary to Land Rover's

9  assertion, it is established  that a written warranty between Wolin (and class

10  members), even if characterized as a "limited warranty," gives rise to an express

11  warranty claim under Florida law.[18]

12      Since Land Rover's fundamental premise is incorrect, it is not surprising that

13  the cases upon which it rely are irrelevant to Plaintiff's claims and, thus, the instant

14  Motion.  In *Frank Griffin Volkswagen, Inc. v. Smith*, 610 So.2d 597, 607 (Fla.App.

15  1992), the issue before the Court was whether the manufacturer's warranty

16  extended to the dealership, which analysis has no application here.  Similarly

17  unavailing is Land Rover's reliance on *Hobco, Inc. v. Tallahassee Associates*, 807

18  F.2d 1529, 1533 (11th Cir. 1987), where the issue before the Court was whether a

19  seller's state of mind may become the subject of a warranty.  Again, there is simply

20  no such issue present in this case.  Lastly, *Bailey v. Monaco*, 350 F.Supp.2d 1036

21  (N.D.Ga. 2004), actually confirms the obligation of the manufacturer to repair or

22  replace the defective parts covered by a limited warranty, which Plaintiff here has

25  [18]Moreover, even if the Court were to determine that, contrary to specific
26  terms set forth in the warranty, it is limited, Plaintiff is still entitled to proceed with
   a breach of warranty claim and, in fact, is seeking the type of damages under this
27  claim (reimbursement for tires and repair of the defect) that Land Rover
28  acknowledges are recoverable under its "limited" warranty.

1   specifically alleged has not been done by Land Rover.[19]

2   Although Land Rover goes to great lengths to confuse the breach of

3   warranty issue, its Opposition (Section C) actually confirms that certification is

4   appropriate.  Land Rover's Opposition acknowledges that (1) it provided Wolin

5   and all class members with a written warranty; (2) the warranty covered tire wear

6   caused by a defect with the Vehicles; and (3) Land Rover is required to repair any

7   Vehicle defect  (Opposition at 12, 20.)  The dispute here simply pertains to (1) the

8   extent and scope of coverage under the warranty and (2) whether Land Rover has

9   failed to adequately repair the Vehicle defect.  Thus, these straightforward disputed

10  issues are common to all class members and readily lend themselves to

11  certification.

### 2.   Plaintiff's FDUTPA Claim Should Be Certified

13  Land Rover next asserts that Wolin has failed to demonstrate that he has

14  sustained actual loss because of a FDUTPA violation. (Opposition at 28.)  It is

15  clear, however, that Wolin has established that he was required to go out of pocket

16  to pay for certain replacement tires as a result of uneven wear caused by the

17  alignment geometry defect and, as such, has suffered actual loss in this respect.

---

19      [19]Also unavailing is Land Rover's argument that its warranty does not

20  contain an affirmation or promise.  On the contrary, the warranty specifically

21  provides:

22      Land Rover North America, Inc., warrants that during the warranty

23      period, if a Land Rover vehicle is properly operated and maintained,
        repairs required to correct defects in factory-supplied materials or

24      factory workmanship will be performed without charge upon

25      presentment for service; any component covered by this warranty
        found to be defective in materials or workmanship will be repaired, or

26      replaced, without charge.

27

28  (Willen Declaration at Ex. 7.)

**PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION**                          -18-

1   (Complaint, ¶ 14.)[20]  Moreover, because the wear was caused by a Vehicle defect,

2   Land Rover was obligated to cover the entire cost of the replacement tires.  Indeed,

3   Stephanie Lutz, Land Rover's Warranty manager, succinctly stated   REDACTED

4      REDACTED      REDACTED      REDACTED            REDACTED      REDACTED

5      REDACTED            (Grenon Decl. at Ex. 14.)  Accordingly, contrary to Land

6   Rover's half-hearted argument, it is clear that Wolin has suffered actual loss under

7   FDUTPA.[21]

8        Further demonstrating the desperate nature of this argument, Land Rover

9   asserts that *Morris v. BMW of North America, LLC*, 2007 WL 3342611 (N.D.Cal.,

10  Nov. 7, 2007), somehow supports its position that Wolin has not been damaged.

11  Land Rover argues that because Wolin purportedly received more than he was

12  entitled to under the applicable service bulletin, he cannot be found to have been

13

14

15      [20]As Land Rover acknowledges, Plaintiff also has asserted that he, along
    with class members, has suffered damages by way of diminution in value of the
16  Vehicles as a result of the defect.  Recognizing that this category of damage is also
    common to all class members, Land Rover seeks to diminish this fact by intimating
17  that diminution only could be determined on a case by case basis.  On the contrary,
    of course, such a calculation could readily be performed on an aggregate, classwide
18  basis by a forensic expert.
19

20      [21]The cases upon which Land Rover relies are markedly different from this
    case, where Land Rover has acknowledged a defect common to all Vehicles and
21  implemented a program that addresses the defect in a uniform manner.  In *O'Neill
    v. The Home Depot U.S.A., Inc.*, 243 F.R.D. 469, 480-481 (S.D.Fl. 2006), the Court
22  determined that class certification was inappropriate because liability was
    predicated on whether or not consumers received certain oral representations from
23  Home Depot salespersons.  Similarly, in *Marino v. Home Depot U.S.A., Inc.*, 245
24  F.R.D. 729 (S.D.Fl. 2007), certification was denied because liability was, again,
25  based on individual representations made by Home Depot employees.  *Hutson v.
    Rexall Sundown, Inc.*, 837 So.2d 1090 (Fla.App. 2003), is, likewise, unavailing, as
26  certification was denied, in part, because of a finding that individuals who read the
27  vitamin labels would not have been misled.
28

1   damaged.  First, Land Rover simply ignores the fact that Wolin was required to pay

2   for two tires that were worn as a result of the defect with the Vehicle.  Second,

3   Land Rover completely mischaracterizes *Morris*, which pertained to whether or not

4   standing existed to assert claims under the California Secret Warranty Act

5   ("Secret-Warranty Act"), Cal.Civil.Code § 1795.92.  Specifically, the Court was

6   asked to determine whether the right to receive notice under the Secret-Warranty

7   Act was a property right and, thus, conferred standing.  That issue is not present

8   here, where the damages being measured arose from Land Rover's failure to

9   comply with its warranty obligations and its fraudulent conduct.  Accordingly,

10  *Morris* does not stand for the proposition, as Land Rover incorrectly suggests, that

11  an individual who was required to go out-of-pocket to replace tires that wore

12  unevenly and prematurely as a result of a vehicle defect has not suffered actual loss

13  under FDUTPA.[22]

14      Land Rover's reliance upon *Montgomery v. New Piper Aircraft, Inc.*, 209

15  F.R.D. 221(S.D.Fl. 2002), is unavailing.  The Court in *Veal v. Crown Auto*

16  *Dealerships, Inc.*, 236 F.R.D. 572 (M.D. Fla. 2006)(holding that class action to

17  recover for deceptive and unfair business practices in order to profit from the sale

18  of window etching as security device should be certified), persuasively

19  distinguished the *Montgomery* case in certifying a Florida only class on the

20  following basis:

21

22

23      Defendant's contention that Plaintiff's FDUPTA and Chapter 634
24      claim are not suitable for class certification is unpersuasive. The
        Fourth Amended Complaint alleges Defendant engaged in a common
25      scheme to deceive or defraud Plaintiff, which included deceptive

26      [22]Although Land Rover's heading suggests that there are issues with

27  Plaintiff's attempt to certify his unjust enrichment claim, the Opposition is

28  noticeably void of any analysis regarding the same.

business practices and violations of Chapter 634. In essence, Plaintiff alleges that Defendant committed the same or very similar unlawful acts utilizing the same methodology against the entire class. While the class members may not have identical claims, Plaintiff has sufficiently established that the common questions of fact and law regarding Plaintiff's FDUPTA claim, including the issue of causation, predominate over individual issues. Moreover, "numerous courts have recognized that the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate." *Allapattah Servs. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003), *reh'g en banc denied*, 362 F.3d 739 (11thCir.2004).

The cases Defendant relies in which class certification of FDUPTA claims was denied are distinguishable. *See Hutson v. Rexall Sundown, Inc.*, 837 So.2d 1090, 1093 (Fla. 4th DCA 2003); *Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 229 (S.D.Fla.2001). In both *Hutson* and *Montgomery*, the FDUPTA claims occurred in Florida and various other states. Therefore, the claims of non-resident consumers would require the application of consumer protection laws from different states.

Since the application of the laws of various states (an issue not present here) was at the center of the decision in *Montgomery*, as the Court held in *Veal*, it clearly has little or no application to a Florida only class action such as that present here.

### 3. Land Rover Improperly Infuses Significant Merits-Based Inquiries

Again seeking to confuse the straightforward certification issues present in this action, Land Rover spends a significant portion of its commonality argument (Opposition at 22-26), engaging in a clear merits-based analysis of Plaintiff's causes of action. This analysis, as set forth above, is simply neither appropriate nor permitted at this stage in the litigation. Land Rover did not, because it had no basis to, file a motion to dismiss Plaintiff's Complaint.[23]

---

[23]The cases upon which Land Rover relies to suggest that no tire wear claims ever can be certified are inapposite. In *Frosini v. Bridgestone Firestone North American Tire, LLC*, 2007 WL 2781656 (C.D.Cal. August 24, 2007), plaintiffs sought certification of a class of vehicle owners covering more than thirty (30) different models of differing types of vehicles in connection with allegedly defective tires that were produced under three (3) different plants over a six (6)

PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

-21-

### 4. Individual Driving Habits And Experiences Do Not Preclude Class Certification Where There Is A Common Defect

Land Rover does not, because it cannot, attempt to distinguish *Samuel-Bassett v. Kia Motors America, Inc.*, 212 F.R.D. 271, 282 (E.D.PA. 2002), *vacated on other grounds*, 357 F.3d 392 (3ᵈ Cir. 2004). There, owners and lessees asserted claims, including for breach of express warranty, in connection with a defective brake system on Kia's Sephia vehicles (sold between 1995 and 2001). In certifying the class, the Court rejected Kia's argument that individual driving habits precluded a finding that common issues predominated:

> In this case, while the defendant has strenuously argued that this case does not satisfy Rule 23(b)(3) because the merits of each individual car owner's complaints must be evaluated along with their individual driving habits and conditions, we nevertheless find from the evidence amassed thus far that the questions common to the class clearly predominate over those which only affect certain individual owners. To be sure, there is but one model at issue in this case, manufactured at Kia's Korea plant.... ***While Defendant is no doubt correct that each vehicle was driven differently by different drivers in different locations and that the vehicles manifested varying symptoms such as pulsating, grinding, vibration, and failure to stop, there is nonetheless more than sufficient indicia that a vast number of those Sephias manufactured and sold between 1995 and 2001 experienced***

year period. Here, in stark contrast, the alignment geometry of the Vehicles was identical in all material respects and the Vehicles came factory equipped with the same tires. The remaining cases cited by Land Rover, *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999); *Ford Motor Co. v. McDavid*, 259 F.2d 261 (4ᵗʰ Cir.1958); and *Stabile v. Daimlerchrysler Corp.*, 2007 WL 1062241 (N.J.Super. April 11, 2007), all stand for the unremarkable proposition that an expert may be able to determine if vehicle alignment is correct. *Volkswagen of America, Inc. v. Sugarman*, 909 So.2d 923 (Fla.App. 3 Dist. 2005), is similarly distinguishable. In that case, the Florida state court held that individual issues regarding causation, in the case of individual, separate accidents, would necessitate mini-trials regarding how bumpers of automobiles were damaged. Here, of course, since Land Rover has admitted a uniform defect and Plaintiff has submitted evidence of a uniform defect applicable to all Class members, such individual issues of causation simply are not present in this case.

> *some or all of the above symptoms and were subject to the wear-out of their brake pads and rotors before reaching the 5,000 mile mark regardless of who was driving them or where or how they were being driven.*
>
> \*          \*          \*
>
> We thus conclude that the questions of whether the Sephia possesses the brake system defect alleged and whether Defendant lacks the means to repair the defect or replace the defective brake system such as to render it liable for beach of express and implied warranties ... do predominate over those issues unique to individual claims.

(*Id.* at 282.)(Emphasis added and footnote omitted.)  In sum, common issues of law and fact clearly predominate because Plaintiff will prove his claims through proof regarding Land Rover's uniform conduct.[24]  All of the questions identified above compose the core issues in this litigation and are susceptible to common proof.[25]

---

[24]Land Rover's attempt to distinguish *Chamberlan v. Ford Motor Company*, 402 F.3d 952, 962 (9th Cir. 2005) (where the court denied a petition for interlocutory review of a class action under a California consumer protection statute alleging that the defendant knowingly manufactured, sold and distributed automobiles containing an engine part with a uniform design defect), is of no moment and serves to highlight the fact that in order to argue that class certification is not appropriate, Land Rover is required to simply ignore all of its own internal documents.  With respect to *Chamberlan*, Land Rover argues that it is distinct because engines cannot fail in as many potential ways as tires.  This argument, however, fails to acknowledge that Land Rover's own documents demonstrate that (1) the alignment geometry defect plaguing the Vehicles was common to the Vehicles; and (2) Land Rover itself adopted and implemented a uniform policy for reimbursing consumers (albeit in an insufficient manner) for tires that were prematurely and unevenly worn as a result of the defect.

[25]Land Rover makes it very clear in its brief that this case should not be certified because, in its view, no case involving a vehicle defect can ever be certified.  This, or course, is not correct.  Plaintiff has asserted claims based on a common defect plaguing the Vehicles which results in uneven and premature tire wear.  Plaintiff further seeks damages as a result of Land Rover's conduct, including its failure to comply with its warranty obligations under these circumstances.  Despite Land Rover's best efforts to confuse the issues, this case, involving a common Vehicle defect, should clearly be certified.

## V.   **CONCLUSION**

For the reasons stated above, the Court should grant Plaintiff's Motion for Class Certification.

LAW OFFICES OF THOMAS D. MAURIELLO

Dated:  May 15, 2008

By:  /s/ Thomas D. Mauriello
Thomas D. Mauriello (SBN 144811)
209 Avenida Fabricante, Suite 125
San Clemente, CA 92672
Telephone: (949) 542-3555
Facsimile: (949) 606-9690
tomm@maurlaw.com

Mark F. Anderson (SBN 44787)
Matthew Da Vega (SBN 195443)
KEMNITZER, ANDERSON, BARRON, OGILVIE, & BREWER LLP
445 Bush Street, 6th Floor
San Francisco, CA 94108
Telephone: (415) 861-2265
Facsimile: (415) 861-3151

James E. Miller
Karen M. Leser Grenon (SBN 231189)
SHEPHERD FINKELMAN MILLER & SHAH, LLP
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile: (860) 526-1120

James C. Shah
Nathan C. Zipperian
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
35 E. State Street
Media, PA 19063
Telephone: (610) 891-9880
Facsimile: (610) 891-9883

**Attorneys for Plaintiff
and the Proposed Class**